JOHN MAXWELL, APPELLANT, v. EDWARD H. AUDIN-WOOD, JONAS H. LANE AND ALBERT D. SMITH, RESPONDENTS.

*Goods consigned to be sold at a fixed price — duty of consignee as to.*

Where a consignee receives goods, with instructions to sell them at a price named, and sells them accordingly, remitting the proceeds to the consignor, and thereafter is compelled to take them back, as not being equal to the sample, it is his duty to at once notify the consignor, and demand repayment of the amount remitted; if, without notifying the consignor, he sells the goods at a price less than that at which he was instructed to sell them, he acts wrongfully, and cannot call on the consignor to make good the loss.

APPEAL from a judgment in favor of the defendants, entered upon the report of a referee.

The action was brought to recover a balance alleged to be due upon the consignment of certain goods to the defendants for sale as commission merchants. The referee found, among other things, that the defendants were co-partners in business; that the plaintiff and one James Sugden, were, on or about April 1st, 1874, and until on or about the first day of April, 1875, continued to be co-partners in business, transacting the same at Amsterdam, N. Y., under the firm name and style of Maxwell & Sugden; that the said Maxwell & Sugden, on or about the 14th day of September, 1874, consigned and delivered to the defendants as such co-partners, one case (containing 32 dozen) of Shetland knit shirts and drawers, to be by them sold upon commission at a fixed compensation there agreed upon; that said Maxwell & Sugden then instructed the defendants to sell the said goods at the price of $5.50 per dozen, less five per cent. on sales; and on or about the ——— day of October, 1874, the defendants, as such commission merchants, sold upon sample and forwarded said case of goods unopened, as received by them, to James Cochrane & Co., of the city of Pittsburg, Pa., at the price above stated; that subsequently, and on or about the month of October, 1874, the said James Cochrane & Co. returned the said goods to the defendants, refusing to accept them upon the ground that the same were not according to the sample shown them by the defendants — were of an inferior quality, and worth less per dozen than the sample, and that they did not want that quality of goods. And the defendants accepted said return of said goods except three dozen, which the said James Cochrane & Co. were allowed by defendants to retain at $5.50 per dozen; that the amount of such sales to James Cochrane & Co., less commission, interest and other proper charges, was $150.86; that the defendants on the 18th day of September, 1874, advanced upon the said goods to the said Maxwell & Sugden $128; that afterwards, and on or about the 10th day of October, 1874, the defendants upon the faith of said sale to James Cochrane & Co., advanced and paid to the said Maxwell & Sugden $22.86, in full payment of the amount of such sale; that the said case of goods sold and forwarded to said James

Cochrane & Co. were not equal to the sample shown by the defendants to the said James Cochrane & Co., and in quality were inferior thereto, and the defendants afterwards, and in or about the month of December, 1874, re-sold said twenty-seven dozen of the same so returned at $3.33⅓ per dozen, being the highest price for which the same could be sold. ^ And that $3.33⅓ per dozen was the highest price for that quality and style of goods, and they were worth no more, and that the entire amount of said sale, less the interest on advances, commission and other proper charges was, including the sales of the three dozen retained by James Cochrane & Co., $81.98, being $68.88 less than the amount of the advances, interest and payments made thereon to the said Maxwell & Sugden; that no notice or information was given by said defendants to said Maxwell & Sugden after the receipt and sale of said goods of any defect in the manufacture or quality of any of said goods, or of any complaints or objections to the same or any part thereof by said James Cochrane & Co., or of their refusal to retain the said goods for any cause, or that defendants had accepted a return of said goods until after defendants had re-sold them; that said goods were returned by the said James Cochrane & Co. to and were received by said defendants and re-sold by them without the knowledge and consent of the said Maxwell & Sudgen, and without the said defendants making any demand of the firm of Maxwell & Sugden to re-pay advances made them thereon; that in or about the month of September, 1874, the said Maxwell & Sugden consigned to the defendants another case of knit shirts and drawers containing twenty-four dozen, to be sold for them on commission by defendants, which were sold by the defendants for the sum of $91.20 over and above commissions and other proper charges; that on the 16th day of December, 1874, the defendants informed the said Maxwell & Sugden by letter that one case of the goods were returned to them as inferior, and that they had hard work to place them. They also inclosed in said letter their check on the Importers' and Traders' National Bank of New York city, payable to the order of said Maxwell & Sugden, for the sum of $22.32, which the defendants in the letter inclosing said check stated was in full to balance account; That the said Maxwell & Sugden received said check and letter

in which the same was inclosed by due course of mail, indorsed and used said check for their own benefit, and in the ordinary course of banking the same was transmitted from Amsterdam, N. Y., for collection and collected of and paid by the said Importers' and Traders' Bank, and by it charged to defendants' account. That afterwards and before the commencement of this action, and on or about the first day of April, 1875, the said firm of Maxwell '& Sugden was dissolved, and the demand set forth in said complaint and all the interest of the said James Sugden in any claim or demand which they might have or hold against the defendants, was sold and assigned and transferred by the said Sugden to the plaintiff herein.

As conclusions of law the referee found, that the plaintiff's claim as set forth and described in his complaint was, before the commencement of this action, settled and paid and satisfied by the defendants. That the defendants are entitled to judgment herein against the plaintiff for their costs and disbursements.

*Z. S. Westbrook*, for the appellant.

*Reed & Drake*, for the respondents.

LEARNED, P. J.:

If, at the time when the defendants sold and received pay for the last consignment, the plaintiff's firm was indebted to them in the amount which they claim, then the referee was right. And the first question is, whether they were so indebted. The defendants had received from the plaintiff's firm the former consignment, with instructions to sell at a certain price. They had advanced some money on the consignment, and had then sold at the price named, and had remitted the balance of the avails. Afterwards the goods had been returned to them as not equal to the sample. Now, assuming that the failure of the goods to equal the sample was not their fault, and that they were entitled to be repaid the money which they had remitted to the plaintiff's firm, they had a plain duty to do.

They should have notified the plaintiff's firm, and required the repayment of the moneys. Without doing this, they had no right

to sell the goods at a price less than that named in their instructions. When, therefore, without notice to the plaintiff's firm, and without demand from that firm of the moneys advanced, they sold the goods at a price less than that at which they were authorized to sell, they did this wrongfully; and they had no right to call on the plaintiff's firm to make good the loss. It is no answer to say that they sold the goods for all they were worth. They had no right to sell them at all, unless for the price named.

This disposes of the question, whether the plaintiff's firm were indebted to the defendants in the amount which they claim. Another question remains. While the defendant had no legal claim against the plaintiff's firm, still there had been a loss which the plaintiff's firm might, if they had chosen, have made good. The question is, did the plaintiff's firm, by any act, allow this claim, and settle with the defendants on the basis of such allowance? The defendants claim that the plaintiff's firm did this by accepting the check sent for the balance of the last consignment. Now, by the acceptance of that check, the plaintiff's firm did not allow any claim, of which they were ignorant. And we must inquire whether they knew of the claim and allowed it when they accepted the check. The letter of the defendants, inclosing the check, does not state the facts. It does not distinctly refer to the former consignment. But it is vaguely expressed, as if it were intended to make the plaintiff's firm suppose that the alleged defective goods were a part of the last assignment. If the plaintiff's firm are to be bound by the acceptance of this check, it should clearly appear that they understood the facts fully. On the contrary, they did not understand them; for they wrote at once to inquire the meaning of the letter, and to know why the whole avails of this consignment was not remitted to them.

We need not say whether, even with knowledge, they were bound to refuse the check, which was a part of what was owing to them. It is enough, that they cannot be prejudiced by its acceptance, unless it be shown that they fully understood what had been done by the defendants, and knew that they had sold the former consignment at a less price than the instructions authorized.

The judgment should be reversed; and a new trial granted, and the reference discharged; costs to abide the event.

Present — LEARNED, P. J., BOARDMAN and BOCKES, JJ.

Judgment reversed; new trial ordered; reference discharged; costs to abide event.